## In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By Carrie Ramirez at 1:33 pm, May 14, 2009

| | |
|---|---|
| In the matter of: ) | |
| ) | Adversary Proceeding |
| MIGUEL C. CAMACHO ) | |
| (Chapter 7 Case Number 08-40960) ) | Number 08-4054 |
| ) | |
| *Debtor* ) | |
| ) | |
| PEARL HEBBARD ) | |
| *Plaintiff* ) | |
| v. ) | |
| MIGUEL C. CAMACHO ) | |
| *Defendant* ) | |

### MEMORANDUM AND ORDER
### ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, Miguel G. Camacho ("Debtor"), filed Chapter 7 on May 30, 2008. On September 2, 2008, Plaintiff filed an Adversary Proceedings pursuant to 11 U.S.C. § 523(a)(2) and (6) for the purpose of determining whether the indebtedness owed by Debtor to the Plaintiff is nondischargable. After Debtor filed his answer, a pre-trial conference was held, and discovery was conducted, Plaintiff filed a Motion for Summary Judgment on February 6, 2009. Debtor filed his Response on March 13, 2009. On March 24, 2008, Plaintiff replied to Debtor's response.

AO 72A
(Rev. 8/82)

Plaintiff argues that a judgment entered by the Superior Court of Gwinnett County, Georgia in favor of Plaintiff and against Debtor for fraud and wrongful eviction "precludes dischargeability under the doctrine of collateral estoppel based on 11 U.S.C. § 523(a)(2), (6) - 'false pretenses, a false representation, or actual fraud' and 'willful and malicious injury by the debtor.'" Motion for Summary Judgment, Dckt.No. 14, pg. 1-2. For the following reasons, Plaintiff Pearl Hebbard's Motion for Summary Judgment is **GRANTED**.

On or about August 23, 2001, Plaintiff entered into a sales agreement to sell property located at 9013 Hightower Trail, Snellville, Gwinnett County, Georgia to Glass-Cam Commercial Developers, Inc. ("Glass-Cam") for $475,000.00 (the "Sale Agreement"). At the time Plaintiff and Glass-Cam entered into the Sale Agreement, Debtor was an officer and/or agent of Glass-Cam. Complaint, Dckt.No. 1, ¶ 6; Answer, Dckt.No. 4, ¶ 6. Following the execution of the Sale Agreement, a dispute arose among Plaintiff, Glass-Cam and other related parties, and on March 26, 2003, Plaintiff instituted an action against Debtor and others to recover damages for fraud, breach of contract, wrongful eviction and other causes of action in the Superior Court of Gwinnett County, Case No. 03-A-03433-1. Complaint and Answer, ¶ 7.

Debtor filed an answer and participated for part of the Gwinnett litigation but did not appear at trial. Brief, Dckt.No. 18, pg. 1-2; Complaint and Answer, ¶ 8. Because Debtor failed to appear at trial, the Gwinnett Court struck Debtor's answer and entered

judgment against Debtor for fraud, wrongful eviction and punitive damages on a default jury verdict. Complaint, ¶ 9; Response, Dckt.No. 18, pg. 1. Specifically, the Judgment on Verdict as to Plaintiff's fraud claim stated that judgment was entered "in favor of Plaintiff and against Defendant Miguel Camacho in the sum of $187,833.00 compensatory damages and $0.00 punitive damages." As to Plaintiff's wrongful eviction claim, judgment was entered "in favor of Plaintiff and against Defendant Miguel G. Camacho in the sum of $25,000.00 compensatory damages and $10,000.00 punitive damages. The jury found that Defendant did act with specific intent to cause harm." Complaint, Dckt.No. 1, Exhibit A.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 5(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed. 265 (1986). Rule 56 of the Federal Rules of Civil Procedure applies to motions for summary judgment in bankruptcy adversary proceedings. See Fed.R.Bankr.Proc. 7056. The party moving for summary judgment has the burden of demonstrating that no dispute exists as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 156, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once this burden is met, the nonmoving party must present specific facts that demonstrate that there is a genuine dispute over material facts. Finally a court reviewing a motion for summary judgment must examine the evidence in light most favorable to the non-moving party, and all reasonable doubts and inferences should be

resolved in the favor of the non-moving party. In re Davis, 374 B.R. 362, 364 (Bankr.S.D.Ga. 2006).

## DISCUSSION

The issue here is whether collateral estoppel as a matter of law precludes the discharge of Debtor's judgment against him. In the present case, Plaintiff brought the instant adversary proceeding claiming that the judgment of the State Court is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) and (6). Section 523 provides in pertinent part as follows:

> (a) A discharge under section 717, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (6)    for willful and malicious injury by the debtor to another entity or to the property of another entity;
> . . .
>
> 11 U.S.C. § 523(a)(2) and (6).

In Section 523(a) dischargeability actions, this Court recognizes the applicability of collateral estoppel. Chisolm v. Stevens (In re Stevens), 1996 WL 33401190

at *3 (Bankr. S.D.Ga. May 21, 1996) (Davis, J.); see Grogan v. Garner, 498 U.S. 279, 284 n.11, 11 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) ("collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); In re Bilzerian, 100 F.3d 886, 892 (11th Cir. 1996); Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995); Hoskins v. Yanks (In re Yanks), 931 F.2d 41, 43 (11th Cir. 1991); In re Latch, 820 F.2d 1163, 1164-65 (11th Cir. 1987).

"Moreover, federal courts must give the same preclusive effect to prior judgments of state courts as those judgments have by 'law or usage' in the courts of that state." In re Griffin, 1999 WL 33591982, at *2 (Bankr. S.D.Ga. 1999) (Davis, J.) (*citing* 28 U.S.C. § 1738 (1994)). "Therefore, this Court must apply the law of the state of Georgia in order to determine the preclusive effect of the state court judgments against the Debtor." Id. (*citing* In re St. Laurent, 991 F.2d 672, 675 (11th Cir. 1993)); see In re Bush, 62 F.3d at 1323 n.6 (applying federal law to determine whether federal court default judgment had collateral estoppel effect and noting that state court judgment would be reviewed under law of that state). "While collateral estoppel may foreclose relitigation of issues decided in prior judicial proceedings, the ultimate issue of dischargeability is a legal question over which the bankruptcy court has exclusive jurisdiction." Id. (*citing* In re Halpbern, 810 F.2d 1061 (11th Cir. 1987).

### 1. Collateral Estoppel under Georgia Law

Under Georgia law, a party may only assert the doctrine of collateral

estoppel if the issue was (1) raised in a prior proceeding, (2) actually litigated and decided, and (3) necessary to final judgment. Boozer v. Higdon, 252 Ga. 276, 278, 313 S.E.2d 100, 102 (Ga. 1984)("In order to successfully plead collateral estoppel, ... one must prove that the contested issues, even though arising out of a different claim, were actually litigated and decided and were necessary to the prior decision."); *see also* Kent v. Kent, 265 Ga. 211-12, 452 S.E.2d 764 (Ga. 1995)("collateral estoppel applies where an issue of fact or law is actually litigated and determined by a valid by a valid judgment, *and* the determination is essential to the judgment.").

Plaintiff has easily proven factors 1 and 3: the default judgment issued by the Gwinnett Court was raised in a prior civil litigation and was necessary to the court and jury's final judgment which ultimately assigned liability for fraud and wrongful eviction to Debtor and his other co-defendants.

Debtor, however, asserts that the second factor above was not satisfied because his liability was not actually litigated and decided. Specifically, Debtor argues that he "participated in the litigation of the Gwinnett County case in the early stages. He paid an attorney to represent him in that case. During the years of litigation, Mr. Camacho found that he could no longer afford to pay his attorney to defend him against Plaintiff's lawsuit." Brief, Dckt.No. 18, pg. 3. Debtor also argued that he "could not afford to travel back and forth from Savannah to Gwinnett County to defend himself." Response, Dckt.No. 18, pg. 2. As a result, Defendant did not appear at the trial, thus his answer was stricken and a

default judgment was entered against him.[1]

In the underlying state court case, Plaintiff specifically raised allegations of fraud as to Debtor. Debtor actively participated in the adversary process for "years." *See* Brief, Dckt.No. 18, pg. 3. He was represented by counsel. He answered the complaint. Yet, he elected not to appear at trial or defend the lawsuit. After the trial on the merits, the jury found Debtor liable for fraud. *See* Complaint, Dckt.No. 1, Exhibit A. This evidence undeniably establishes that the matters pertaining to fraud were actually litigated and decided in the state court.

---

[1] Though collateral estoppel can apply to dischargeability proceedings, res judicata can not. In Brown v. Felsen, the Supreme Court held that litigants could not preclude the litigation of bankruptcy dischargeability claims by relying upon state court judgments. 442 U.S. 127, 138-39, 99 S.Ct. 2205, 60 L.Ed. 2d 767 (1979).

> Collateral estoppel, or "issue preclusion" differs from res judicata in that it does not bar adjudication of the ultimate merits of a claim. Instead, it only precludes re-litigation of discrete issues which have a bearing on the outcome of subsequent cases. So [the fraud] issue which was decided in [the Georgia state court] need not be re-litigated in [this Court], but the prior determination of [fraud] is not ultimately dispositive of [dischargeability].

In re Williams, 282 B.R. 267, 272 n. 2 (Bankr.N.D.Ga. 2002); *see also* Jones v. Martin (In re Martin), 2000 WL 33958187, at *2 n.1 (Bankr.S.D.Ga. Aug. 24, 2000)(Davis, J.).

However, the res judicata statute does provide insight into applying collateral estoppel under Georgia law. Two Georgia statutes recognize the conclusive effect of judgments by providing as follows:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside. O.C.G.A. § 9-12-40

> Where the merits were not and could not have been in question, a former recovery on purely technical grounds shall not be a bar to a subsequent action brought so as to avoid the objection fatal to the first. For a former judgment to be a bar to subsequent action, the merits of the case must have been adjudicated. O.C.G.A. § 9-12-42

"A judgment of default is a 'judgment on the merits' for purposes of § 9-12-42..." In re Griffin, 1999 WL 33591982, at *2 (Bankr.S.D.Ga. June 24, 1999)(Davis, J.)(*citing* Butler v. Home Furnishing Co, 163 Ga.App. 825, 825 (Ga.Ct.App. 1982); Fierer v. Ashe, 147 Ga.App. 446, 249 S.E.2d 270 (Ga.Ct.App. 1978)). Since collateral estoppel establishes a narrower bar to subsequent litigation, logically a judgment of default is a "judgment on the merits" for the purpose of collateral estoppel as well.

In light of the foregoing, this Court concludes that all the necessary requirements for the application of collateral estoppel under Georgia law are present in this proceeding, thus the doctrine of collateral estoppel will prevent Debtor from relitigating these factual issues.

Some decisions though have added another requirement to the analysis: that the party against whom preclusion is asserted must have had a "full and fair opportunity" to litigate.[2] Because of the origins of that element as noted in footnote 2, that element is not applied in this Order except to this extent. It should be self evident that the collateral estoppel could only arise out of a proceeding in which fundamental due process was accorded. That should always be an unspoken element for application of collateral estoppel. To the extent that courts have articulated the "full and fair opportunity" standard, I find that it requires nothing more than notice and an opportunity to be heard. That did not occur in In re Whelan because defendants were never served with an affidavit of damages and thus

---

[2] The "full and fair opportunity" requirement originated in the 1996 bankruptcy decision League v. Graham (In re Graham), 191 B.R. 489 (Bankr.N.D.Ga. 1996). Graham cited two Georgia Court of Appeals cases for the requirement: Winters v. Pund, 179 Ga.App. 349, 352, 346 S.E.2d 124 (Ga.Ct.App. 1986) and Watts v. Lippitt, 171 Ga.App. 578, 579, 320 S.E.2d 581 (Ga.Ct.App. 1984). At the time of the 1996 decision, those two cases were good law. However, those cases were overturned in 1997 by the Georgia Court of Appeals in Wickliffe v. Wickliffe Co., 227 Ga.App. 432, 489 S.E.2d 153 (Ga.Ct.App. 1997) cert. denied (Jan.5, 1998). After 1997, those cases were never cited by any Georgia state court requiring the "full and fair opportunity" factor in analyzing collateral estoppel. As a result, I now question whether this remains a factor that the movant must prove to establish collateral estoppel. Nevertheless, it has been articulated as an element in later cases, including this Court. See e.g., Sterling Factors, Inc. v. Whelan (In re Whelan), 245 B.R. 698, 704-05 (N.D.Ga. 2000)(Forrester, J.); In re Cunningham, 355 B.R. 913, 918 (Bankr.N.D.Ga. 2006)(Bihary, J.); In re Sanders, 315 B.R. 630, 633-34 (Bankr.S.D.Ga. 2004)(Davis, C.J.); In re Williams, 282 B.R. 267, 272 (Bankr.N.D.Ga. 2002)(Mullins, J.); Ozburn v. Moore (In re Moore), 2001 WL 1855340, at *3 (Bankr.M.D.Ga. March 8, 2001)(Hershner, C.J.); Jones v. Martin (In re Martin), 2000 WL 33958187, at *2 (Bankr.S.D.Ga. Aug. 24, 2000)(Davis, J.). In re Whelan, 236 B.R. 495, 501 (Bankr.N.D.Ga. 1999)(Bihary, J.);In re Hooks, 238 B.R. 880, 884 (Bankr.S.D.Ga. 1999)(Dalis, C.J.); Dement v. Gunnin (In re Gunnin), 227 B.R. 332, 336 (Bankr.N.D.Ga. 1998)(Bihary, J.); In re Pope, 209 B.R. 1015, 1021 n. 7 (Bankr.N.D.Ga. 1997)(Drake, J.); Utica Mutual Insurance, Co. v. Johnson (In re Johnson), 203 B.R. 1017, 1023 (Bankr.S.D.Ga. 1997)(Dalis, C.J.); Wilcox, M.D. v. Hritz (In re Hritz), 197 B.R. 702, 705 (Bankr.N.D.Ga. 1996)(Cotton, C.J.); In re Selmonosky, 204 B.R. 820, 826 (Bankr.N.D.Ga. 1996)(Brizendine, J.); League v. Graham (In re Graham), 191 B.R. 489, 495 (Bankr.N.D.Ga. 1996)(Drake, J.).

were not given an opportunity to contest damages before an order was entered against them. 236 B.R. 495, 508 (Bankr.N.D.Ga. 1999) *modified by* Sterling Factors, Inc. v. Whelan (In re Whelan), 245 B.R. 698, 708-13 (N.D.Ga. 2000). Indeed there is precedent for the notion that element is established if the "opportunity" was accorded to the defendant, and that a decision to disregard or avoid that opportunity does not negate it. *See* In re Hooks, 238 B.R. 880, 886-87 (Bankr.S.D.Ga. 1999)(Dalis, J.).

Here due process was accorded. Debtor knew about the case, had the opportunity to litigate, and did so for a time. He then decided not to participate for practical reasons, but not a reason which suggests that due process was not accorded to him.[3]

### 2. Collateral Estoppel under Federal Law

Even though I have held that under Georgia law the doctrine of collateral estoppel prevents Debtor from relitigating these factual issues, it is also helpful to analyze whether collateral estoppel would apply under federal preclusion standards because both federal and Georgia law provide that collateral estoppel applies when the identical issue sought to be litigated in the action at bar was "actually litigated." *See* Brown v. Felsen, 442 U.S. 127, 139 n.10, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979) (stating federal preclusion requirements); In re Bush, 62 F.3d at 1322 (discussing federal preclusion); In re Barber, 316

---

[3] Debtor also chose not to defend in the underlying state court action despite the forseeability of the conclusive effect of his decision to withdraw. *See* In re Bush, 62 F.3d at 1325("Justice . . . is probably better served if . . . collateral estoppel does not apply to . . . default judgments . . . unless . . . the parties could reasonably have foreseen the conclusive effect of their actions.")(citation omitted). Debtor may therefore be held to the consequences of the default judgment in this bankruptcy proceeding without offending due process.

B.R. 391, 393 (Bankr.M.D.Ga. 2004)(Laney, J.)(discussing the state preclusion requirements); Boozer v. Higdon, 252 Ga. 276, 278, 313 S.E.2d 100, 102 (Ga. 1984) (establishing the state preclusion requirements).

Under federal judgment issue preclusion, "the 'actual litigation' requirement may be satisfied by showing substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.'" In re Bush, 62 F.3d at 1324 (*quoting* In re Daily, 47 F.3d 365, 368 (9th Cir. 1995)). In the present case, Debtor did not simply give up at the outset. He actively participated in the adversary process for "years." *See* Brief, Dckt. No. 18, pg. 3. He was represented by counsel. He answered the complaint. However, he elected not to appear at trial or defend the lawsuit. Debtor's participation in the prior case was substantial. Therefore, even under the more stringent Federal rule, the fraud issue was "actually litigated" in the underlying state court action.

### 3. Mitigating Factors

Despite the fact that under Georgia law the default judgment issued by the Superior Court of Gwinnett County against Debtor meets all the requirements for collateral estoppel, Debtor argues that "[m]itigating factors are present in this case such that the application of collateral estoppel would not be in the interest of justice." Thus, Debtor asks this court to use its discretion and choose to decline applying issue preclusion in this case. Brief, Dckt.No. 18, pg. 4.

The Eleventh Circuit recognized that when applying federal preclusion standards "whether to allow issue preclusion is within the sound discretion of the trial court." It further stated

> The presence of mitigating factors in another case might cause a court to exercise discretion to deny preclusion to a default judgment even if the doctrine's formal elements are otherwise met. In some cases, the amount of money at stake or the inconvenience of the forum might disincline a defendant to offer a defense. In the case of such an "ordinary" default, a subsequent court might decline to allow preclusion.
>
> In re Bush, 62 F.3d at 1325 n. 8.

In arguing that mitigating factors are present, Debtor states:

> Although there was a significant amount of money at stake in this case, Defendant did make his best efforts to participate in the Gwinnett County case until he could no longer afford to pay an attorney to represent him. Mr. Camacho lives in Savannah; driving back and forth from Savannah to Gwinnett County is inconvenient and costly. Defendant could not afford to take time off of work to drive to Gwinnett County for frequent court hearings and thus was unable to represent himself in the Gwinnett County case.
>
> Brief, Dckt.No. 18, pg. 4.

First, this "mitigating factors" argument only applies if federal preclusion standards govern, which is not the case here. Despite this, looking at the merits of Debtor's

11

argument, I still do not find Debtor's argument persuasive. The amount of money at stake was substantial.[4] *See* Id.("there was significant money at stake in this case."). Also, as established above, Debtor did, in fact, substantially participate in the litigation. *See* In re Bush, 62 F.3d at 1325 n. 8.

Furthermore, application of collateral estoppel in this case is consistent with bankruptcy policy. Plaintiff has already litigated the question of Debtor's fraud. Debtor suffered a default judgment of fraud because he chose not to participate in the legal process. "To require Plaintiff to incur additional expense to litigate an issue which she has already pursued diligently is unreasonable and contrary to the Code's attention to both debtor and creditor rights." In re Hooks, 238 B.R. at 887.

Last, this decision accords proper deference to our Federal-State judicial system. The default judgment was issued by the Superior Court of Gwinnett County, Georgia. "Appeal of that judgment would appropriately proceed through the state court appellate system. The default judgment was not appealed. A bankruptcy court is not an alternate appellate court to a State court judgment." Id.

In sum, this Court holds that the judgment entered by the Superior Court of Gwinnett County, Georgia, in favor of Plaintiff and against Debtor, finding that fraud and wrongful eviction had been committed, and that damages awarded, collaterally estops

---

[4] The compensatory damages were over $200,000.

Debtor from disputing that judgment and the nature of his conduct. However, as discoverability was not expressly decided in that case that question remains a matter of exclusive bankruptcy jurisdiction.

### 4. Dischargeability

#### a. Fraud

"There is an identity of issues between the claim of fraud asserted in the Superior Court Case and dischargeability claim under § 523(a)(2)(A)." In re Cunningham, 355 B.R. 913, 918 (Bankr.N.D.Ga. 2006). In order to prove that a debt was obtained by fraud under § 523(a)(2)(A), a creditor must show by a preponderance of the evidence: (1) that the debtor made a false representation with the intent to deceive the creditor; (2) that the creditor relied on the representation; (3) that the reliance was justified; and (4) that the creditor sustained a loss as a result of the representation. *See* In re Bilzerian, 100 F.3d 866, 892 (11th Cir. 1996); In re St. Laurent, 991 F.2d 672, 676 (11th Cir. 1993). The tort of fraud under Georgia law requires: (1) a false representation made by the defendant; (2) which the defendant knew was false; (3) made with an intent to deceive the plaintiff; (4) justifiable and detrimental reliance by the plaintiff on such representation and (5) damages suffered by the plaintiff as a result. *See* Crawford v. Williams, 258 Ga. 806, 806, 375 S.E.2d 223, 224 (Ga. 1989); Lister v. Scriver, 216 Ga.App. 741, 745, 456 S.E.2d 83, 86 (Ga.Ct.App. 1995); Lykins v. Nationwide Mut. Ins. Co., 214 Ga.App. 577, 579, 448 S.E.2d 716, 717 (Ga.Ct.App. 1994). "The court finds the requirements for a fraud claim under Georgia law sufficiently identical to the elements requirement for a showing of fraud pursuant to 11

U.S.C. § 523(a)(2)(A) . . . " Sterling Factors, Inc. v. Whelan (In re Whelan), 245 B.R. 698, 705-06 (N.D.Ga. 2000); *see also* In re Hooks, 245 B.R. 880, 888 (Bankr.S.D.Ga. 1999)(Dalis, J.).

### b. Wrongful Eviction

Under 11 U.S.C. § 523(a)(6), a Chapter 7 discharge does not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." In Kawaauhau v. Geiger, the Supreme Court narrowed the scope of Section 523(a)(6) in that the Court interpreted the statute such that "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998)(emphasis in original). The Court held that debts stemming from recklessly or negligently inflicted injuries will not be held nondischargeable under Section 526(a)(6). Id. at 64.

Since Geiger, courts have endeavored to articulate the precise standard to apply to determine whether an injury is willful and malicious. As I have previously noted, "engaging in a voluntary act with the desire to cause harm or the knowledge that injury will occur to a targeted person is sufficiently 'willful and malicious.'" Henderson v. Woolley (In re Wooley), 288 B.R. 294, 301 (Bankr.S.D.Ga. 2001(Davis, J.)(*citing* Johnson v. Fors (In re Fors), 259 B.R. 131, 136 (8th Cir.B.A.P. 2001)). Engaging in a voluntary act with the belief that harm is substantially certain to occur is also sufficiently willful and malicious.

Further an injury is willful and malicious when there is objective substantial certainty of harm or a subjective motive to cause harm. Id.; see also In re Rowland, 316 B.R. 759, 763-64 (Bankr.S.D.Ga. 2004)(Davis, J.).

According to the Judgment on Verdict as to Plaintiff's wrongful eviction claim, judgment was entered "in favor of Plaintiff and against Defendant Miguel G. Camacho in the sum of $25,000.00 compensatory damages and $10,000.00 punitive damages. The jury found that Defendant did act with specific intent to cause harm." Debtor proposes that the jury's award for wrongful eviction is sufficient to satisfy § 523(a)(6). I agree for the following two reasons.

First, the jury found that Debtor had specific intent to cause Debtor harm in the wrongful eviction action. According to my previous decision In re Rowland, "an injury is willful and malicious when there is . . . a subjective motive to cause harm." 316 B.R. 759, 763-64 (Bankr.S.D.Ga. 2004)(Davis, J.); see also Henderson v. Woolley (In re Wooley), 288 B.R. 294, 301 (Bankr.S.D.Ga. 2001(Davis, J.)("if a debtor commits an intentional act and he or she can be shown to have actually intended harm, or if that act was substantially certain to result in harm, then the Geiger standard is met.").

Second, "[p]unitive damages may be awarded [in Georgia] only in such tort action in which it is proven by clear and convincing evidence that the defendant's action showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of

care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1; see Scott v. Battle, 249 Ga.App. 618, 621 (Ga.Ct.App. 2001)("In Georgia, the purpose of punitive damages is to deter the repetition of reprehensible conduct by the defendant... " (citing Hosp. Auth. Of Gwinnett County v. Jones, 261 Ga. 6133, 614(1), 409 S.E.2d 501 (Ga. 1991)(footnotes omitted)). Absent willful misconduct, malice, fraud, wantonness, or oppression, there can be no recovery of punitive damages. Colonial Pipeline Co. v. Brown, 258 Ga. 115, 118, 365 S.E.2d 827 (Ga. 1988)("Negligence, even gross negligence, is inadequate to support a punitive damage award."); Lamb v. State Farm Mut. Auto Ins. Co., 240 Ga.App. 363, 365, 522 S.E.2d 573, 575-76 (Ga.Ct.App. 1999); Davis v. Southern Exposition Management Co., 232 Ga.App. 773, 776, 503 S.E.2d 649, 652 (Ga.Ct.App. 1998).

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that summary judgment for the Plaintiff on the question of dischargeability under 11 U.S.C. § 523(a)(2) and (6) is GRANTED. The March 3, 2008, judgment by the Superior Court of Gwinnett County, Georgia, in the amount of $222,833.00 is determined to be non-dischargeable.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This ___ day of May, 2009.